IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| **BUCK ISLAND, LLC AND BEP LAND INVESTORS, LLC** | * * * * | |
| **Plaintiffs,** | * * | |
| v. | * * | Case No. 4:23-cv-00179 |
| **JOHN HILL,** | * * * | |
| **Defendant.** | * | |

## MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR DAMAGES AND SANCTIONS AND SUPPORTING MEMORANDUM

Pursuant to Local Rule 7 for the administration of civil cases in the United States District Court for the Southern District of Georgia, Plaintiffs Buck Island, LLC ("BI") and BEP Land Investors, LLC, ("BEP"), (hereinafter collectively referred to as "Plaintiff Buyers") by and through their undersigned counsel, hereby file this Motion to Enforce Settlement Agreement and for Damages and Sanctions and Supporting Memorandum against Defendant John Hill[1] (hereinafter referred to as "Defendant Seller"). (Plaintiff Buyers and Defendant Seller shall be collectively referred to as "the Parties".)  In support of this Motion, Plaintiff Buyers represent to the Court as follows:

## INTRODUCTION

Plaintiff Buyers are in the unfortunate position of being forced to file this Motion to Enforce Settlement Agreement and Request for Damages and Sanctions for Defendant Seller's failure to abide by and honor the settlement that the Parties reached to resolve this matter regarding a contract for the

---

[1] Defendant Seller John Hill refers also to Mary Alice Smiley, as Attorney in Fact for John Hill, pursuant to the Power of Attorney executed on May 2nd, 2023.

sale and purchase of real estate ("Original Contract"). *See* Complaint, Exhibit A [Docket No. 1]. The Parties made unequivocal, affirmative representation to this Court that they had reached a settlement, memorialized by the Parties' Joint Notice of Settlement filed in this cause [Docket No. 22], and corresponding "text only" Order signed by Magistrate Judge Christopher L. Ray. [Docket No. 23]. Additionally, the Parties entered into a Final Memorandum of Settlement October 2, 2023 ("Settlement Agreement"), *See* **Exhibit 1** ("Settlement Agreement"). The Settlement Agreement contemplated that the parties would enter into an amended and restated purchase and sale agreement to give effect to the terms of the Settlement Agreement on or before October 12, 2023 at 5:00 p.m.

Rather than enter into an amended and restated purchase and sale agreement as contemplated by the Settlement Agreement, Defendant attempted to "re-trade" Plaintiffs and significantly alter the material terms of the Settlement Agreement. Plaintiffs provided numerous notices to Defendant that the closing must occur on or before November 15, 2023 and thereafter on or before November 27, 2023. Defendant Seller refused to execute an amended and restated purchase and sale agreement in accordance with the Settlement Agreement an honor Plaintiff's Buyers right to elect the closing date as contemplated by the Settlement Agreement and Original Contract. Specifically, Plaintiff Buyers provided Defendant Seller timely and proper notice of the date certain and location of the closing, a well as the name of the closing attorney. Plaintiff Buyers also provided Defendant Seller repeated notice of the unavoidable and substantial damages which Plaintiff Buyers would suffer, should Defendant Seller refuse to close on or before November 27, 2023.

Despite all the above, Defendant Seller refused to attend the Parties' real estate closing of the subject real estate ("Property") or execute the closing documents which were transmitted to Seller electronically and would have allowed the closing to proceed on November 27, 2023. In fact,

Defendant Seller and Defendant's attorney made themselves unavailable by any means of communication from November 21-26 leading up to the November 27 closing deadline.

Due to Defendant Seller's refusal, Plaintiff Buyers were unable to meet the deadline for completing a 1031 (tax-deferred) exchange[2], in order to acquire the Property as replacement property. Consequently, Plaintiff Buyers suffered damages which Plaintiff Buyers specifically alerted Defendant Seller on numerous occasions. Georgia law, which applies in this instance does not permit Defendant Seller to simply disregard the accord between the Parties and compels the Court to enforce its terms. Further, this Court should award damages and enter sanctions against Defendant Seller for his willful refusal to honor the Parties' Settlement.

## PROCEDURAL POSTURE AND JURISDICTIONAL STATEMENT

This case was initiated on June 30, 2023, when Plaintiff Buyers BI and BEP filed a Complaint to Require Performance of a Contract to Convey Real Property against Defendant Seller John Hill ("Complaint"), assigned the above-referenced Case No. 4:23-cv-00179. [Docket No. 1]. Thereafter, as noted above, on October 10, 2023, the Parties filed their Joint Notice of Settlement with this Court, notifying the Court that they had reached settlement in this matter as to all claims and counterclaims asserted in this action, and were in the process of preparing settlement documents. [Docket No. 22]. On that same date, based on the Parties Joint Notice, Magistrate Judge Christopher L. Ray entered an Order canceling the Parties Pre-Mediation Status Conference and Settlement Conference. [Docket No. 23].

---

[2] IRC Section 1031 allows for the postponement of paying tax on a gain if the seller reinvests the proceeds in similar property as part of a qualifying like-kind exchange.

3

Federal district courts have the inherent power to summarily enforce settlement agreements entered into by party litigants in cases pending before the court. *See BP Products N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1132 (M.D. Fla. 2007) ("[A] district court has jurisdiction to enforce a settlement agreement, at least when one party refuses to abide by the agreement prior to dismissal of the action." (*citing Kent v. Baker,* 815 F.2d 1395, 1400 (11th Cir. 1987)). Accordingly, this Court has jurisdiction to enforce the Parties Settlement as requested herein.

## STANDARD OF REVIEW

"The construction and enforcement of settlement agreements are governed by principles of the state's general contracts law." *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985); *see also Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999) ("In general, the law of contracts governs the construction and enforcement of settlement agreements. We also refer to state law principles when reviewing the scope of an attorney's authority to enter into a settlement agreement"); *Fitzhugh v. AB McDonough's, Inc.*, 2017 WL 937965 at *1 (S.D. Ga. Mar. 9, 2017) ("[f]ederal courts 'use the applicable state's contract law to construe and enforce settlement agreements'")(*citing Vinnett v. Gen. Elec. Co.,* 271 Fed. Appx. 908, 912 (11th Cir. 2008)). Under Georgia law, "in order to succeed on a motion to enforce a settlement agreement, a party must show the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the [non-movant's] case." *See Fitzhugh*, 2017 WL 937965 at *2 (*citing DeRossett Enterprises, Inc. v. Gen. Elec. Capital Corp.,* 621 S.E.2d 755, 756 (Ga. Ct. App. 2005)). Because the same standards apply to a motion to enforce settlement agreement as a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Id.*

4

## RELEVANT GOVERNING CONTRACT TERMS

Section 4. of the Parties' Settlement Agreement provides:  Upon mutual execution of same, **Buyers shall submit to Seller's counsel the Amended and Restated Purchase and Sale Agreement for review on or before October 9th, 2023 by 5PM EST, which will be mutually executed by the parties to this agreement on or before October 12th, 2023 by 5PM EST.** This document may be signed in multiple counterparts." *See* **Exhibit 1**, **at 1**.

Section 1.m. of the Parties' Settlement Agreement provides, in pertinent part: **"All…provisions of the Contract for the Sale and Purchase of Real Estate dated April 20, 2023 not in conflict with the terms set forth above shall be incorporated into the Amended and Restated Agreement…"** *Id.,* at 3. (emphasis added.)

Section 10. of the Parties' Original Contract provides, in pertinent part**: "TIME OF SETTLEMENT: Settlement ("Closing") shall be made at the office of Walker Zeigler…upon 15 days prior written notice of Buyer to Seller if Buyer so elects."** *See* **Collective Exhibit 9,** attached hereto (Pages 1, 4 and 6 of Original Contract, executed by the Parties April 20, 2023). (emphasis added.)

Section 1.d. of the Parties' Settlement Agreement provides, in pertinent part: **"On or before November 30, 2023, Buyer will purchase from Seller the 10 Acre Parcel for $1,800,000.00…"** *See* **Exhibit 1, at 1** attached hereto (Contract 1, executed by the Parties October 2, 2023). (emphasis added.)

Section 1.e. of the Parties' Settlement Agreement provides, in pertinent part: **"On or before November 30, 2023, Buyer will purchase from Seller the 121 Acre Parcel for $200,000.00."** *Id.* (emphasis added.)

**STATEMENT OF UNDISPUTED FACTS**

The Original Contract and the Settlement Agreement were agreed upon and executed by the Parties. Numerous drafts were exchanged of a proposed amended and restated purchase and sale agreement but a fully executed version was never agreed upon. On October 2, 2023, the Settlement Agreement was entered into among the Parties. The Settlement Agreement contemplated that the Parties would mutually execute an Amended and Restated Agreement on or before October 12, 2023 by 5 PM EST, with a closing date "on or before" November 30, 2023. See **Exhibit 1** attached hereto ("Settlement Agreement").

Per the Settlement Agreement, Plaintiff Buyers were required to submit an amended and restated purchase and sale agreement to Defendant Seller's counsel for review on or before October 9, 2023, by 5PM EST. At 2:36 PM EST, on October 9, 2023, counsel for Plaintiff Buyers submitted via email a draft of the amended and restated purchase and sale agreement to Defendant Seller's counsel for Defendant Seller's review. Id. at 3 ¶4. See also **Exhibit 2** attached hereto.

On October 10, 2023, the Parties filed a Joint Notice of Settlement, notifying the Court that they had reached a settlement in this matter as to all claims and counterclaims asserted in this action and were in the process of preparing settlement documents. See **Exhibit 3** attached hereto. This Court entered a corresponding text order on October 10, 2023. [Docket No. 23].

The Original Contract mandates that the Parties' closing shall be made at the office of Walker Zeigler upon 15 days prior written notice of Plaintiff Buyers' to Defendant Seller if Plaintiff Buyers so elect. Plaintiff Buyers provided 15 days written notice to Defendant Seller that the

Parties' closing would take place on November 27, 2023, at the office of Walker Zeigler.  See **Exhibit 9**.

The Settlement Agreement set forth a closing deadline of on or before November 30, 2023 (not on November 30, 2023).  **See Exhibit 1.**

Per the Settlement Agreement, the terms of the Original Contract not in conflict with the terms set forth in the Settlement Agreement were incorporated into the Amended Contract. Compare **Exhibits 1 and 9**.  The Original Contract and the Settlement Agreement do not have conflicting terms regarding the Parties' closing date and the Plaintiffs right to elect the same.  Accordingly, Plaintiff Buyers designated November 27, 2023, as the date of the Parties' closing. **See Exhibit 8**.

On October 12, 2023, having not received return of the executed Amended Contract by 5 PM EST, counsel for Plaintiff Buyers emailed counsel for Defendant Seller, advising that Defendant Seller was in breach of the Settlement Agreement.  See **Exhibit 4** attached hereto. This initial version provided a closing date of November 17, 2023, thereby notifying Defendant Seller that the closing would occur prior to November 30, 2023.

Subsequently, versions of the Amended Agreement were circulated between the parties and on October 24, 2023, several email exchanges occurred, during which Plaintiff Buyers requested counsel for Defendant Seller forward copies of all conservatorship filings in preparation for closing, which Plaintiff Buyers advised would need to occur on November 15, 2023.  See **Collective Exhibits 5, 12, and 20-22.**

In response to Plaintiff Buyer's indication of the need to close November 15th, counsel for Defendant Seller replied, "Sounds good…" Defendant Seller's counsel further intimated that if Plaintiff Buyers could get the latest version of the Amended Agreement to her, she could try to get it

done "today." Later that day, Plaintiff Buyers submitted a redlined draft of the Amended Agreement to her. See **Collective Exhibit 5** attached hereto.

On November 2, 2023, Plaintiff Buyers emailed counsel for Defendant Seller continuing to attempt to elicit a signed amended purchase and sale agreement from Seller. See **Exhibit 6** attached hereto.

As of November 9, 2023, Plaintiff Buyers had received neither any response to the November 2 email nor Defendant Seller's comments to the last draft of the Amended Contract Plaintiff Buyer submitted to counsel. Plaintiff Buyer emailed Defendant Buyers' counsel, asking for a response, reminding counsel that Defendant Seller was in default as of October 12, and noting that there was very little time left. Later that night, Plaintiff Buyers again emailed counsel for Defendant Seller, advising, "just want to emphasize we need any comments on my last draft asap…" See **Collective Exhibit 7** attached hereto.

By November 10, 2023, Defendant Seller had not sent responsive comments to the October 24th draft of the Amended Contract provided by Plaintiff Buyers. Instead, counsel for Defendant Seller emailed Plaintiff Buyer, attempting to make changes to the after-deal structure of the Parties' settlement agreement and requesting documentation on issues not contemplated by the Parties' Settlement Agreement. Plaintiff Buyers responded, advising they were not interested in negotiating further and that sale must close before November 27, 2023. See **Exhibit 8** attached hereto. See also **Exhibit 9** attached hereto (Original Contract at 1, 4 and 6). From that point on, Plaintiff Buyers repeatedly advised Defendant Seller and counsel that the closing date would be November 27, 2023. Under the Settlement Agreement and Original Contract, it was Buyers right to elect the closing date

by providing Seller with 15 days written notice. The November 10, 2023 email constitutes notice of the November 27, 2023 closing date.

On November 14, 2023, Plaintiff Buyers emailed counsel for Defendant Seller, advising her that the terms of the draft contract she sent Plaintiff Buyers November 10th did not conform with the Parties' settlement agreement. Plaintiff Buyers attached a draft of the Amended Contract that was compliant with the Parties' Settlement Agreement, executed by Plaintiff Buyers. Plaintiff Buyers requested Defendant Seller to countersign and return the Amended Agreement to Plaintiff Buyers by noon Thursday, November 16, 2023. See **Collective Exhibit 10** attached hereto.

On November 17, 2023, via email and a telephone call with Defendant Seller's counsel, counsel for Plaintiff Buyers explained that issues and concerns posed by Defendant Seller were outside the scope of the agreement between the Parties, not burdens of Plaintiff Buyers and/or Defendant Seller's factual inaccuracies about the correct contractual language. Counsel for Plaintiff Buyers advised that if all issues weren't resolved that day, and the Amended Agreement signed, Plaintiff Buyers would proceed to tender and close under the settlement agreement, and file suit to enforce the settlement agreement, seeking attorney fees and damages from the loss of the Plaintiff Buyers' benefit of the 1031 exchange. See **Collective Exhibit 11** attached hereto.

The evidence will show that Defendant Seller was in constant breach of the Settlement Agreement from soon after execution up through November 27, 2023, Plaintiff Buyer's chosen closing date in accordance with the Settlement Agreement and original contract. Defendant Seller did not meet the requirement for execution of an amended and restated purchase and sale agreement by the October 12 deadline and introduced numerous drafts contradicting the terms of the Settlement Agreement and other terms of the Original Contract the most egregious of which is repeated efforts

to extract 20% of the sale proceeds from a subsequent sale by Plaintiff Buyers- a term nowhere to be found in the Settlement Agreement or Original Contract.  See **Exhibits 6, 8, 10, 12 and 20-22.**

On November 20, 2023, counsel for Plaintiff Buyers emailed counsel for Defendant Seller, advising that Plaintiff Buyers would be tendering performance under the settlement agreement on November 27, 2023.  See **Collective Exhibit 12.**

On November 21, 2023, Plaintiff Buyers initialed and emailed to Defendant Seller's counsel all remaining handwritten changes made by Defendant Seller's counsel, "to accommodate a timely closing" with such changes only putting the contract into compliance with the Settlement Agreement. At that point, Defendant Seller's counsel had a fully executed, initialed final version of the amended and restated agreement from Plaintiff Buyers.  *See* **Exhibit 13**.  Plaintiff Buyers reminded counsel for Defendant Seller numerous times in email exchanges on November 21, 2023, that the purchase must close November 27, 2023, which was Plaintiff Buyers' 1031 deadline. *See id.*

On November 21, 2023, six days in advance of the Buyers chosen closing date, Defendant Sellers Attorney sent an email stating:

> "to reiterate, this is not happening this week. Next Wednesday, November 29th, 2023 works for us".

*See* **Exhibit 14**.

Defendant Seller's counsel again mentioned the Power of Attorney's conflict with closing November 27th, despite Plaintiff Buyers' advising that the Power of Attorney did not have to appear at the closing. *See* **Collective Exhibit 12** attached hereto.

On November 22, 2023, Defendant Seller's counsel again mentioned the Power of Attorney's conflict with closing November 27th, despite Plaintiff Buyers' advising that the Power of Attorney

10

did not have to appear at the closing. Counsel did not return the final version of the Amended Contract executed by Defendant Seller. *See* **Exhibit 14** attached hereto.

In a letter dated November 24, 2023, counsel for Buyers send sent counsel for Seller the latest proposed version of the amended and restated agreement provided by Seller executed by Buyers changing only the closing date to November 27, 2023 (the "Amended Contract"). *See* **Exhibit 15**. The Amended Contract was the latest signed version of a proposed amended and restated purchase agreement tendered and by Defendant Seller and was executed by both Seller and Buyers. *See* **Exhibit 16**. The only change to the Amended Contract made and initialed by Buyers was a changed of the closing date to November 27, 2023 as previously elected by Plaintiff Buyers and of which Defendant Seller had been repeatedly notified. The letter reiterated that in order to accomplish the 1031 contemplated by the Original Contract and Settlement Agreement, the closing must occur November 27, 2023. Again, counsel advised that should Defendant Seller fail to close November 27, 2023, Plaintiff Buyers would file suit to enforce the Settlement Agreement. *See* **Exhibit 15** attached hereto. *See also* **Exhibit 16** (Amended Agreement executed by Plaintiff Buyers), attached hereto.

On November 27, 2023, at 12:10 p.m. counsel for Plaintiff Buyers provided the closing documents necessary for closing to counsel for Defendant Seller and even offered to have a paralegal drive to Seller's location to have such documents executed. *See* **Exhibit 17** attached hereto. Two minutes later, at12:12PM, Counsel for Defendant Seller emailed counsel for Plaintiff Buyers, acknowledging receipt of the closing documents, and advising she had forwarded them to her client. *See* **Exhibit 18** attached hereto.

By 12:00 p.m. on November 27, 2023, Plaintiff Buyers tendered performance under the Original Contract, Settlement Agreement and Amended Contract through execution of the closing document and deposing the closing funds with the closing attorney.

In a letter dated November 30, 2023, RFC Certified Public Accountants, federal and state tax return preparers for Plaintiff Buyers, indicated that the Parties' failure to close by the November 27, 2023 will result in damages of at least $516,217.  *See* **Exhibit 19** attached hereto.

## ARGUMENT AND MEMORANDUM OF LAW

The Parties undeniably reached a settlement as reflected not only by their correspondence, but the affirmative representations to the Court confirming the settlement.  The correspondence between the Parties and the Parties' representations to the Court clearly reflect that there is no dispute that there was a settlement in this case, thereby removing any question of fact as to the existence of the Parties' settlement.

The terms of the Parties' settlement are equally undisputed as they are clearly reflected in the Contract, Settlement Agreement and Amended Contract.  There is no dispute as to the plain language in the applicable legally binding documents, governing imposed deadlines and the contractual right of Plaintiff Buyers to select the closing date.  In light of the attached correspondence, affirmative representations to the Court via the Parties' filings, and clear, unambiguous language of the Original Contract, Settlement Agreement and Amended Contract, Defendant Seller cannot, in good faith, dispute that there was a settlement between the Parties, that the Parties' Settlement included the contractual right of Buyers to select the closing date.  Nor can Defendant Seller legitimately contest that she did not receive timely, proper notice of the closing date. Accordingly, Plaintiff Buyers are entitled to an order enforcing the terms of the Parties' Settlement. This matter would be closed, and the litigation between the Parties would be concluded, but for Defendant Seller's default in complying with the terms of the Settlement Agreement, delays in finalizing the Amended Contract, efforts to renegotiate the terms of the Parties' Settlement, and refusal to attend the real estate closing.

Accordingly, Plaintiff Buyers are also entitled to an award of damages for Defendant Seller's breach of the terms of the Settlement Agreement and sanctions for Defendant Seller's bad faith refusal to honor the terms of the Parties' Settlement, and for being forced to file this Motion to compel Defendant Seller to finalize the Parties' settlement.

I. **THE PARTIES ENTERED INTO AN ENFORCEABLE SETTLEMENT UNDER GEORGIA LAW WHICH THE COURT IS COMPELLED TO ENFORCE.**

.In *Superglass Windshield Repair, Inc. v. Mitchell*, 233 Ga. App. 200, 201–02, 504 S.E.2d 38, 40 (1998), the Court of Appeals of Georgia affirmed the trial court's grant of a motion to enforce the settlement agreement under strikingly similar circumstances. Like the present case, the parties in *Superglass* engaged in extensive settlement negotiations. *Superglass*, 233 Ga. App. at 200. Like the present case, the parties in *Superglass* initially entered into an oral settlement agreement. *Id.* Like the present case, the parties in *Superglass* notified the Court that a settlement had been reached. *Id.* at 201.[3] Like the present case, the parties in *Superglass* notified the Court of the settlement prior to the creation or execution of the settlement documents memorializing the settlement.[4] *Id.* Like the present case, the settlement documents in *Superglass* included the terms of the parties' settlement, as well as additional terms that the party opposing the enforcement of the settlement unilaterally inserted. *Id.*

---

[3] The circumstances in this case weigh even more strongly in favor of the enforcement of the settlement agreement because, unlike Appellant, who affirmatively joined in the representation to the Court that the Parties had reached a settlement, the party opposing enforcement of the settlement in *Superglass* did not make any **affirmative** representations regarding the existence of the settlement to the Court. The Court of Appeals, however, noted the significance that counsel for the party opposing enforcement of the settlement was physically present in the courtroom when the announcement as to the settlement was made, and did not make any statement contradicting or objecting to the representation.

[4] The circumstances in this case weigh more strongly in favor of the enforcement of the settlement agreement because the parties entered into a written settlement agreement duly acknowledged by both parties.

Like the present case, the party opposing the enforcement of the settlement agreement refused to complete the settlement if the new conditions were not accepted. *Id.*

Under these circumstances, the trial court found that the party seeking to enforce the settlement agreement was entitled to judgment as a matter of law. Under these circumstances, the Georgia Court of Appeals affirmed the trial court's decision expressly rejecting, as a matter of law, the position by party opposing the enforcement of the settlement that no settlement was consummated noting that counsel for the party opposing the enforcement of the settlement agreement "stated without reservation that the parties had agreed to the terms of their settlement." *Id.* at 202.

The Georgia Court of Appeals went further to call the denial of the settlement in opposition to the motion to enforce the settlement agreement "suspicious" in light of the prior representations by the counsel for the party opposing the enforcement of the settlement, but went on to hold that such "…denial that an agreement was reached is, however, immaterial where it is undisputed that the attorney for the party denying the agreement communicated acceptance of the settlement offer." *Id.* The Georgia Court of Appeals went on to hold that any subsequent negotiations after settlement was reached were immaterial and could not destroy the prior agreement. *Id.* Accordingly, the Georgia Court of Appeals enforced the settlement between the parties without the terms that were unilaterally asserted by the party opposing the enforcement of the settlement. *Id.*

In this case, the Parties admittedly reached a Settlement Agreement as reflected by the executed Settlement Agreement. Indeed, at no point has Defendant Seller ever disputed that the Parties have reached a settlement. To the contrary, Defendant Seller has confirmed that the Parties reached a settlement at every opportunity. The admitted settlement of this matter has not been completed, however, because Defendant Seller refused to honor the terms of the Parties' Settlement Agreement through unconscionable delays and demands for new terms.  Defendant Seller's refusal

to execute the Amended Agreement and attend the closing on the date elected by Plaintiff Buyers and finalize the Parties' Settlement Agreement, as demonstrated herein, has directly and proximately resulted in damages to Plaintiff Buyers.

based on the foregoing, this Court should enforce the terms of the Parties Settlement, which are reflected in attached **Exhibits 1** and **16** in support of this Motion, and Exhibit A to the Complaint and order both specific performance of the Settlement Agreement and damages for breach. S*ee* *Bishop v. International Paper Co.*, 174 Ga. App. 863, 864 (1985) (recognizing specific performance and enforcement of settlement agreement and damages for breach both recoverable). *See also* Georgia Contracts: Law and Litigation, Settlement Agreements Section 12A:7 (citing *Bishop* and providing that "Damages may be available if a party to a settlement agreement breaches the agreement"). Like the trial court and the Court of Appeals in Superglass, this Court should enforce the terms of the Parties' settlement.

## II.      THIS COURT SHOULD ENTER SANCTIONS AGAINST DEFENDANT SELLER FOR HIS REFUSAL TO HONOR THE TERMS OF THE SETTLEMENT AND FOR FORCING PLAINTIFF BUYERS TO FILE THIS MOTION TO ENFORCE.

Additionally, this Court should enter sanctions against Defendant Seller as a result of Defendant Seller's bad faith in refusing to fulfill his obligations under the Parties' Settlement. This Court is unquestionably vested with the authority to enter sanctions against a party. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991) ("it is firmly established that the power to punish for contempt is inherent in all courts."). This Court's authority to enter sanctions against a party includes the authority to enter sanctions in connection with the enforcement of a settlement agreement. *See Fitzhugh*, 2017 WL 937965 at *1. The Court's reasoning and justification for entering sanctions in *Fitzhugh* are applicable to the present case. The Parties clearly entered into a settlement as reflected by the correspondence and the affirmative representations to the

Court. The terms of the settlement are not in dispute. Under the circumstances, Plaintiff Buyers are entitled to not only an order enforcing the terms of the Parties' settlement, but also for resulting damages Plaintiff Buyers have suffered, and sanctions against Defendant Seller in the form of an award of the attorneys' fees and expenses that Plaintiff Buyers have incurred as a result of Defendant Seller's refusal to honor the terms of the Parties' settlement or other relief the court deems appropriate.[5]

## **CONCLUSION**

WHEREFORE, having filed this Motion, Plaintiff Buyers BI and BEP pray that the Court enforce the terms of the Parties' Settlement; that Defendant Seller be ordered to pay damages Plaintiff Buyers sustained as a result of Defendant Seller's refusal to comply with the terms of the Parties' Settlement in the amount of $516,217 plus prejudgment interest, that the Court sanction Defendant Seller John Hill by awarding Plaintiff Buyers their attorneys' fees incurred in enforcing the Parties' Settlement Agreement, and that the Court award Plaintiff Buyers such other and further relief as the Court may deem just and proper.

Respectfully submitted this the 12th day of December, 2023.

                               ROBERTS TATE, LLC

                               */s/ James L. Roberts, IV*
                               James L. Roberts, IV
                               Georgia Bar No. 608580
                               jroberts@robertstate.com
                               P.O. Box 21828
                               St. Simons Island, Georgia 31522
                               (912) 638-5200 - Office
                               (912) 638-5300 - Fax

---

[5] To the extent the Court sustains Plaintiff Buyers' Motion to Enforce the Settlement Agreement and determines that the circumstances in this case warrant the imposition of sanctions, then Plaintiff Buyers hereby request an evidentiary hearing, or leave of Court to file supporting affidavits, to present evidence of the current, up-to-date amount of fees and expenses incurred by Plaintiff Buyers as a result of Defendant Seller's refusal to honor the terms of the Parties' settlement.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

| | | |
|---|---|---|
| **BUCK ISLAND, LLC AND BEP LAND INVESTORS, LLC** | * * * | |
| **Plaintiffs,** | * * | |
| v. | * * | Case No. 4:23-cv-00179 |
| **JOHN HILL,** | * * * | |
| **Defendant.** | * | |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served all parties in this case with the foregoing MOTION TO ENFORCE SETTLEMENT AGREEMENT AND FOR SANCTIONS AND SUPPORTING MEMORANDUM in accordance with the directive from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

Submitted this 12th day of December, 2023.

ROBERTS TATE, LLC

*s/ James L. Roberts, IV*
James L. Roberts, IV
Georgia Bar No. 608580
jroberts@robertstate.com
P.O. Box 21828
St. Simons Island, Georgia 31522
(912) 638-5200 - Office
(912) 638-5300 - Fax
